| MAMES F. McKAY III, Judge.
In September of 1987, a tank car leaking butadiene caught fire and burned for three days while the car was parked on the CSX tracks in the Gentilly area. Several thousand residents in the area were exposed to the effects of this fire and were forced to evacuate from their homes. A large number of residents brought actions against a number of defendants due to this event.
The case was certified as a class action and went to trial in the summer of 1997; this trial (phase I) concerned the issue of damages as to twenty “bellwether” plaintiffs as well as the class wide issues of compensatory and punitive liability of the defendants. Phase I resulted in a verdict for the plaintiff class on the common issues with damages being awarded to the twenty plaintiffs. In phase II, the quantum of damages was tried as to those defendants that the jury found to have punitive liability.
In late 1998, the phase III trial commenced. Phase III involved a second flight of twenty plaintiffs; the issues involved in phase III were whether these twenty plaintiffs were entitled to damages and if so what the quantum of those | ¡.damages were. Of the twenty plaintiffs, eighteen were found to have some damages; Kristina Cash and Jewel Franklin were found to have suffered no damages. The jury made the following awards: Johnny Brown was awarded $10,000.00 for physical pain and suffering, $5,000.00 for mental anguish and $2,000.00 for evacúa *14 tion/inconvenience; Regina Mercadel was awarded $2,500.00 for mental anguish; Gregory Atkinson was awarded $10,000.00 for pain and suffering, $5,000.00 for mental anguish and $3,000.00 for evacuation/inconvenience; Jeanette Barden was awarded $10,000.00 for physical pain and suffering, $2,500.00 for mental anguish, $17,850.00 for property damage, $1,500.00 for evacuation/inconvenience, and $2,000.00 for medical expenses; Myrtle Tucker was awarded $20,000.00 for physical pain and suffering, $2,000.00 for mental anguish, $3,000.00 for evacuation/inconvenience, and $2,500.00 for medical expenses; Andrew Rondeno was awarded $10,000.00 for physical pain and suffering, $5,000.00 for mental anguish, $2,000.00 for property damage, $500.00 for past lost wages, and $2,000.00 for medical expenses; Shunta Dickerson was awarded $500.00 for physical pain and suffering, $100.00 for evacuation/inconvenience, and $500.00 for medical expenses; Cleveland Bethley was awarded $20,000.00 for physical pain and suffering, $5,000.00 for mental anguish, and $2,500.00 for medical expenses; Joseph Hunter was awarded $10,000.00 for physical pain and suffering, $6,000.00 for mental anguish, $1,500.00 for evacuation/inconvenience, and $500.00 for past lost wages; Deborah Grant White was awarded $2,000.00 for mental anguish, $500.00 for property ^damage, and $1,500.00 for evacuation/inconvenience; Sandra August was awarded $200.00 for pain and suffering and $500.00 for evacuation/inconvenience; LaShann Freeman was awarded $15,000.00 for physical pain and suffering, $2,000.00 for mental anguish, $2,000.00 for evacuation/inconvenience, and $4,000.00 for medical expenses; Calvin McGee was awarded $15,000.00 for physical pain and suffering, $2,000.00 for evacuation/inconvenience, $500.00 for past lost wages, and $200.00 for medical expenses; Glenda Bell was awarded $10,000.00 for physical pain and suffering, $2,000.00 for mental anguish, and $1,500.00 for evacuation/inconvenience; David Strong was awarded $100.00 for physical pain and suffering, $200.00 for past lost wages, and $150.00 for medical expenses; Dana Paul was awarded $5,000.00 for physical pain and suffering and $3,000.00 for mental anguish; Breionne Robinson was awarded $10,000.00 .for physical pain and suffering, $500.00 for mental anguish, and $1,500.00 for evacuation/inconvenience; and Jacqueline Thomas was awarded $60,000.00 for physical pain and suffering, $25,000.00 for mental anguish, and $15,000.00 for evacuation/ineonvenience. The defendants filed several motions which the trial court denied. On July 9, 1999, the trial court entered judgment on the jury’s verdict. The defendants now appeal the awards made to Jacqueline Thomas, Joseph Hunter, Cleveland Bethley, Jr., Myrtle Tucker, LaShann Freeman, Calvin McGee, Gregory Atkinson, Jeanette Bar-den, Glenda Bell, Johnny Brown, Andrew Rondeno, Breionne Robinson and Dana Paul.
|4The defendants raise the following assignments of error on appeal: 1) the trial judge erred in failing to reduce the jury’s award to Jacqueline Thomas when there was no evidence introduced to support that award; 2) the trial judge erred in failing to reduce the jury’s physical pain and suffering award to Joseph Hunter when there was no evidence introduced to support that award; 3) the trial judge erred in failing to reduce the jury’s awards for physical pain and suffering and medical damages for eleven other plaintiffs; and 4) the trial court should vacate and/or reduce the phase III punitive damage allocations depending upon the disposition of this appeal or of the pending phase I and II appeal.
A court of appeal may not set aside a trial court’s or a jury’s finding of fact in absence of “manifest error” or unless it is *15 clearly wrong. The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court and the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous). The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one. Cormier v. Comeaux, 98-2378 (La.7/7/99), 748 So.2d 1123, 1126-1127. The reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its evaluations and inferences are as reasonable. The reason for this well settled principle of review is based not only upon the trial court’s better 1 r,capacity to evaluate live witnesses (as compared with the appellate court’s access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts. Courteaux v. State, DOTD, 99-0353 (La.App. 4 Cir. 9/22/99), 745 So.2d 91, 98.
The standard for appellate review of general damage awards is difficult to express and is necessarily non-specific, and the requirement of an articulated basis for disturbing such awards gives little guidance as to what articulation suffices to justify modification of a generous or stingy award. Nevertheless, the theme that emerges from Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963) through Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), and through Reck to the present case is that the discretion vested in the trier of fact is “great,” and even vast, so that an appellate court should rarely disturb an award of general damages in a particular case. It is only when the award is, in either direction, beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances that the appellate court should increase or reduce the award. Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1261 (La.1993).
A JNOV should be granted only where the “facts and inferences point so overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict. On the other hand, if there is substantial evidence opposed to the motions, that is evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach Indifferent conclusions, the motion should be denied.” Scott v. Hospital Service District No. 1, 496 So.2d 270 (La.1986). In ruling on a motion for JNOV, a court may not weigh the evidence or substitute its judgment for that of the jury. Coleman v. Deno, 99-2998 (La.App. 4 Cir. 4/25/01), 787 So.2d 446.
Under Louisiana Code of Civil Procedure article 1972, a new trial is mandated (1) when the verdict or judgment appears clearly contrary to the law and the evidence, (2) when the party has discovered since the trial, new evidence important to the cause which he could not with due diligence have obtained before or during the trial, and (3) when the jury was bribed or has behaved improperly so that impartial justice has been done. The jurisprudence recognizes the trial judge’s great discretion in deciding a motion for new trial and, on appeal, the appellate court is limited to a determination of whether a trial judge abused his “much discretion” in granting or denying a new trial. Zatarain v. WDSU-Television, 95-2600 (La.App. 4 Cir. 4/24/96), 673 So.2d 1181.
*16 Cleveland Bethley, Jr. was a New Orleans firefighter who responded to the burning tank car fire. The testimony at trial showed that, at different times, Mr. Bethley was located between 50 and 300 feet of the burning tank car. Mr. Bethley suffered eye irritation, throat irritation and nausea for about three days which he treated himself with over-the-counter medications such as Tylenol. Mr. Bethley also suffered from dizziness as a result of his exposure and continues to suffer from that same dizziness about three times a week.
|7With the exception of Mr. Bethley, all of the other appellees in this were residents who were forced to evacuate from their homes.
Myrtle Tucker, who is now deceased, was very traumatized by the tank car fire. Two days after the fire she “was still scared and she wanted to go see the doctor.” Ms. Tucker sought and obtained medical treatment from Dr. Henry Bra-den.
LaShann Freeman was living at 2551 Bay Street, three blocks from the burning tank ear. As a result of her exposure, Ms. Freeman suffered eye irritation, dry heaves and a fever for about three days. She was provided medical treatment for these symptoms by the Red Cross while at the Capdau School temporary shelter. Ms. Freeman continues to suffer from migraine headaches as well as eye irritation.
Calvin McGee lived at 2828 North Rocheblave, four blocks from the burning tank car. As a result of Mr. McGee’s chemical exposure, he suffered eye irritation, choking and nausea for a number of days, and treated himself for these symptoms with over-the-counter medication. Mr. McGee continues to suffer from skin irritation.
Gregory Atkinson lived at 2838 Painters Street, two blocks from the burning tank car. Mr. Atkinson suffered eye irritation and nausea for approximately three days; he sought medical attention from Dr. Myra Anderson for these injuries. Mr. Atkinson also suffered from recurring chest pains as a result of his exposure and continues to suffer from these same chest pains.
| sJeanette Barden lived at 2458 Treasure Street, only one block from the burning tank car. As a result of Ms. Barden’s exposure, she suffered eye irritation, headaches, loss of appetite and nausea for approximately three weeks, and skin irritation for approximately three months. She sought medical attention from Dr. Carroll. Ms. Barden continues to this day to suffer from loss of sleep.
Glenda Bell lived at 2718 N. Dor-genois, approximately six blocks from the burning tank car. As a result of Ms. Bell’s exposure, she suffered from eye irritation, diarrhea, bad headaches, loss of sleep, shortness of breath, nausea and vomiting for approximately two days. Ms. Bell treated herself for these injuries with over-the-counter medication.
Johnny Brown lived at 3022\ Mandeville Street, approximately four blocks from the burning tank car fire. As a result of his exposure, Mr. Brown suffered eye irritation, throat irritation, nausea, headaches and a rash for approximately one week. Mr. Brown treated himself with over-the-counter medications such as Visine, Pepto Bismol and aspirin.
Andrew Rondeno lived at 2518 Deer Street, approximately six blocks away from the burning tank car. As a result of Mr. Rondeno’s exposure, he suffered eye irritation, throat irritation, nausea, vomiting and a rash. For these symptoms, he sought and obtained medical *17 attention on several occasions over a period of two months from Dr. Nathaniel Ross. Mr. Rondeno also continues to suffer from back pain as result of falling out of bed when the explosion occurred.
| gBreionne Robinson was a minor at the time of the incident and at the time that her case came to trial. At the time of the incident, Breionne lived at 3020/6 Mandeville Street, approximately four blocks away from the burning tank car. She suffered eye irritation, nausea and diarrhea for several days, and she was treated for these symptoms with over-the-counter medication. Ms. Robinson also suffered from skin irritation for several weeks and loss of sleep for a couple of months as a result of her exposure. She sought and obtained medical attention from a dermatologist for her skin irritation problems.
Dana Paul lived at 1900 Spain Street, approximately twelve blocks away from the burning tank car. As a result of Ms. Paul’s exposure, she suffered eye irritation, throat irritation, nose irritation, headaches and nausea for two to three days. Ms. Paul treated herself for eye irritation and nausea with over-the-counter medications such as Murine and Pepto Bis-mol.
Jacqueline Thomas, who is now deceased, lived at 2419 Franklin Avenue, six blocks away from the burning tank car. As a result of her exposure, Ms. Thomas suffered skin irritation, diarrhea and vomiting for approximately three days, and for these symptoms she sought medical attention from a Dr. Guenther. At the time of the tank car fire, Ms. Thomas was elderly and was caring for five of her grandchildren. She was forced to evacuate with her grandchildren to Gayarre Elementary;. the shelter was overcrowded and somewhat unsanitary. Ms.' Thomas also didn’t have time to pack any extra clothes; in fact, she had to continue wearing a shirt soaked with urine because she did not have enough diapers for one of her |ingrandchildren and there were no baby cribs available'at the shelter. Upon returning home, Ms. Thomas had to clean her entire house, wash all of the clothes and throw away her food. Ms. Thomas also sought and obtained medical treatment for her grandchildren. The testimony at trial indicated that Ms. Thomas suffered a great deal, mentally and emotionally, as a result of the fire.
Joseph Hunter was forced to evacuate from' his home. Mr. Hunter claimed and testified at trial that the burning tank car fire and his subsequent evacuation caused him- inconvenience, mental distress, and anxiety.
As stated previously, the discretion vested in a jury awarding general damages is “vast” and even “great.” A trial court or an appellate court should not disturb an award of this kind unless it is beyond that a reasonable trier of fact could assess for the effects of the injuries to the plaintiffs under the particular circumstances of the case. Based on the record before this Court, the general damages awarded to the appellees in the instant case are not beyond that which a reasonable trier of fact could assess for the effects of these particular injuries to these particular plaintiffs under these particular circumstances. Furthermore, we find no error in the trial court’s refusal to reduce the awards to these plaintiffs.
The appellants contend that the trial court should vacate and/or reduce the phase III punitive damage allocation depending upon the disposition of this appeal or of the pending phase I and II appeal. This issue is not properly before this Court at this time. If the phase I and II verdicts are modified on appeal, the defendants will *18 then have the opportunity to address this issue.
_J_uFor the foregoing reasons, we affirm the judgment below.
AFFIRMED.
GORBATY, J., dissents with reasons.