# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 18-901


**JOSHUA L. ADAMS, ET AL**

**VERSUS**

**UNION PACIFIC RAILROAD COMPANY, ET AL.**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 14-C-3165-B
HONORABLE A. GERARD CASWELL, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**CANDYCE G. PERRET
JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of D. Kent Savoie, Candyce G. Perret, and Jonathan W. Perry, Judges.


**AMENDED AND, AS AMENDED, AFFIRMED.**

**Kenneth Warren DeJean**
**Attorney at Law**
**Post Office Box 4235**
**Lafayette, LA 70502**
**(337) 235-5294**
**SPECIAL MASTER**

**William H. Howard, III**
**Alissa A. Allison**
**Kathlyn G. Perez**
**Laura E. Carlisle**
**Baker, Donelson, Bearman, Caldwell,**
**& Berkowitz, P.C.**
**201 St. Charles Avenue, Suite 3600**
**New Orleans, LA 70170**
**(504) 566-5200**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Union Pacific Railroad Company**

**H. Alston Johnson, III**
**Steven J. Levine**
**Paul LeBlanc**
**John B. Shortess**
**Phelps Dunbar, LLP**
**Post Office Box 4412**
**Baton Rouge, LA 70821-4412**
**(225) 346-0285**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Union Pacific Railroad Company**

**Antonio M. Clayton**
**Clayton, Frugé & Ward**
**3741 Highway 1 South**
**Port Allen, LA 70767**
**(225) 344-7000**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Union Pacific Railroad Company**

**Elena A. Pecoraro**
**Grant F. Freeman**
**Anna M. Grand**
**Pecoraro Law Firm**
**95 Woods Crossing, Suite 100**
**Lafayette, LA 70508**
**(337) 266-2233**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Union Pacific Railroad Company**

**D. Blayne Honeycutt**
**Colt J. Fore**
**Hannah Honeycutt Calandro**
**Fayard & Honeycutt**
**519 Florida Avenue, SW**
**Denham Springs, LA 70726**
**(225) 664-0304**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Elaine Carrier**

**PERRET, Judge.**

In this train derailment case, defendant, Union Pacific Railroad Company (hereinafter, referred to as "Union Pacific"), appeals a trial court judgment that awarded plaintiff, Elaine Carrier, damages in the amount of $3,895.00. For the following reasons, we find that the trial court abused its discretion in awarding Ms. Carrier $3,250.00 for her evacuation and inconvenience damages and we hereby amend this award to $1,000.00. We affirm the $500.00 award for mental anguish and the $145.00 award for lost wages, for a total damage award of $1,645.00.

**FACTS AND PROCEDURAL HISTORY:**

On August 4, 2013, twenty-six railcars[1] derailed near Lawtell, Louisiana, causing lube oil, dodecanol, and sodium hydroxide solution (also referred to as sulfidic caustic solution) to spill from three of the derailed train cars. Union Pacific owned and operated the train and tracks at issue and, as a result of the derailment and chemical spill, authorities implemented a one-mile radius evacuation zone that remained in effect until August 7, 2013.

Ms. Carrier, individually and on behalf of her minor son, Eric Carrier, filed suit against Union Pacific on July 11, 2014. On September 12, 2016, Union Pacific stipulated to liability; thus, causation and damages were the only issues before the trial court. On February 8, 2017, the trial court appointed Kenneth DeJean as the Special Master pursuant to La.R.S. 13:4165, to preside over all the trials and ordered that each plaintiff's case be tried separately.[2]

---

[1] Union Pacific's brief refers to only twenty-three train cars derailing. However, the evidence suggests that an updated report from Union Pacific indicated that twenty-six train cars derailed.

[2] The appointment of a special master may be made "[p]ursuant to the inherent judicial power of the court and upon its own motion and with the consent of all parties litigant." La.R.S. 13:4165(A). In such capacity, the special master "has and shall exercise the power to regulate all proceedings before him and to do all acts and take all measures necessary or proper for the efficient performance of his duties." La.R.S. 13:4165(B). Such duties may include making "findings of fact or conclusions of law." La.R.S. 13:4165(C)(1).

Union Pacific presented its case on June 27-28, 2017, with Ms. Carrier presenting her case on August 14, 2017. On October 20, 2017, the Special Master issued his Report and Recommendation, which found that Ms. Carrier "has proven that, it is more probable than not, her complaints and damages as stated at trial were caused as a result of the train derailment and resulting chemical spill and/or the threat of a chemical spill and the evacuation." The Special Master "recommend[ed] that the District Court find that causation for her complaints and damages has been established" and recommended that the trial court award Ms. Carrier $3,250.00 for "Evacuation/Inconvenience," $500.00 for "Mental Anguish," and $145.00 for "Lost Wages."[3] The Special Master's Report and Recommendation summarized Ms. Carrier's testimony, as follows (citations to the record omitted):

> At the time of the derailment, Elaine Carrier was living at 227 Perry Drive, Lawtell, Louisiana with her stepmother and her two-year-old son, Eric Carrier. She estimates that she lives "about half a mile" from the derailment. On the day of the derailment, Elaine Carrier was driving home from her job in Opelousas when she saw a big cloud of dust. She was informed by the St. Landry Parish Sheriff's Department that a train had derailed and that she had to take a detour home. While she was taking the detour, she saw the derailed train cars. She and her son, Eric, then went to her friend's house, who lives by Miller's Bar-B-Que on Highway 190, and they watched the derailment until they were told to leave by a police officer. She learned of the evacuation while watching the news. She testified that while watching the news, she learned that authorities were asking every resident to evacuate. She then immediately evacuated with her son, Eric, to Evangeline Downs for two days (Sunday to Tuesday). She testified that before she evacuated, she was able to grab a change of clothes because she thought she would only be gone for one night. She testified that it was inconvenient trying to provide for her two-year old son while they were evacuated.

---

[3] The Special Master also recommended that the trial court award Ms. Carrier $200.00 for the "Evacuation/Inconvenience" of her two-year old son, Eric; however, because the trial court judgment awarded a lump sum in the amount of $3,895.00, we assume the trial court adopted the Special Master's recommended damages for Ms. Carrier and that it rejected the recommended amount of $200.00 on behalf of Eric. Because Ms. Carrier has neither appealed nor answered this appeal seeking recovery of the $200.00, we find that amount was deemed rejected and is now final.

2

On the day of the derailment, Ms. Carrier testified that it smelled like "a whole bunch of bleach chemicals." She testified she saw the cleaning crew after the derailment and that they were there for two to three weeks. She testified that seeing the derailed cars made her fearful but she does not have any fear today.

At the time of the derailment, Elaine Carrier was working for Active Adult Daycare Center doing home health and making $7.25 an hour. She testified that while she was evacuated, she missed about 16-20 hours of work.

On cross-examination, Ms. Carrier testified that she chose to evacuate based on what she saw on the news and that a police officer never came to her house and ordered her to evacuate. She testified that Union Pacific paid for her hotel room at Evangeline Downs. She testified that she has no independent, specific records regarding the actual hours from work she missed during the evacuation. She did not seek any sort of medical treatment, counseling or therapy. She did not have any out-of-pocket expenses. Her son, Eric, did not treat with a doctor, nor she did she have any out-of-pocket expenses for him. She testified that her son, Eric, does not have any physical complaints stemming from the derailment. When she returned home, a representative of the DEQ tested her house and nothing was detected.

On November 6, 2017, Union Pacific filed an objection to the Report and Recommendation with the trial court arguing for a de novo review on the basis that the Special Master's "findings of fact and conclusions of law are erroneous." Following a hearing on July 27, 2018, the trial court issued an oral ruling affirming the Special Master's Report and Recommendation and subsequently rendered a written judgment in favor of Ms. Carrier and against Union Pacific. Notably, the trial court awarded Ms. Carrier a lump sum in the amount of $3,895.00.[4]

Union Pacific now appeals this judgment, alleging the following four assignments of error: (1) the trial court erred in awarding damages to Ms. Carrier for mental anguish, absent any accompanying physical injury or property damage; (2) the trial court erred in awarding damages to Ms. Carrier on the basis of negligent infliction of inconvenience, absent any accompanying physical injury or

---

[4] The judgment at issue was signed on September 6, 2018, and was designated as final and immediately appealable.

3

property damage; (3) the trial court abused its discretion by awarding $3,250.00 for inconvenience; and (4) the trial court erred in awarding $145.00 for lost wages.

**STANDARD OF REVIEW:**

In this case, the trial judge sat as the trier of fact.[5]  In order for this court to reverse the factual findings of the trial judge, manifest error must exist.  *Stobart v. State*, *Dep't of Transp. and Dev.*, 617 So.2d 880 (La.1993).  Under a manifest error standard of review, this court can only reverse if it finds, based on the entire record, that there is no reasonable factual basis for the factual findings and that the factfinder is clearly wrong.  *Id.*  As stated in *Rosell v. ESCO*, 549 So.2d 840, 844-45 (La.1989) (citations omitted):

> [w]hen findings are based on determinations regarding the credibility of witnesses, the manifest error—clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said.  Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination.  But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.

---

[5] Although under the authority of La.R.S. 13:4165 the district court empowered the Special Master to make findings of fact and conclusions of law, the Louisiana constitution and laws vest the judicial power in judges to make the final determinations of fact and conclusions of law.  *See Bordelon v. Louisiana Dep't of Corrections,* 398 So.2d 1103 (La.1981).  In conformity with that mandate, La.R.S. 13:4165(C)(3) provides, in pertinent part, "After a contradictory hearing, the court may adopt the report, modify it, reject it in whole or in part, receive further evidence, or recommit it with instructions."  In the present case, the trial court affirmed the Special Master's findings of fact and conclusions of law.  Thus, the trial judge functioned as the ultimate factfinder and adjudicator of the law in this case.

Thus, this court must be cautious not to reweigh the evidence or to substitute its own factual findings just because it would have decided the case differently.

Further, the trial court has much discretion in assessing general damages, and an appellate court should not modify the award unless it is "beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances[.]" *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257, 1261 (La.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059, (1994). Only if the appellate court finds an abuse of discretion may it examine prior awards of general damages to determine the amount the trier of fact reasonably could award. *Theriot v. Allstate Ins. Co.*, 625 So.2d 1337 (La.1993). "In instances where the appellate court is compelled to modify awards, the award will only be disturbed to the extent of lowering or raising an award to the highest or lowest point which is reasonably within the discretion afforded the trial court." *Id.* at 1340.

**DISCUSSION:**

*Mental Anguish Damages*

Union Pacific argues in its first assignment of error that the trial court erred in awarding damages to Ms. Carrier on the basis of mental anguish, absent any accompanying physical injury or property damages. In support of this proposition, Union Pacific cites to the Louisiana Supreme Court case, *Moresi v. State Through Department of Wildlife and Fisheries,* 567 So.2d 1081, 1095 (La.1990), wherein the plaintiffs sought "to recover on the basis that defendants' ordinary negligence caused them only mental disturbance." The court held that a plaintiff, without bodily harm or property damage, may recover for mental injuries if the situation creates "the especial likelihood of genuine and serious mental distress, arising from

5

the special circumstances, which serves as a guarantee that the claim is not spurious." *Id.* at 1096. Union Pacific argues that Ms. Carrier's circumstances do not constitute "special circumstances" and that the trial court manifestly erred in awarding mental anguish damages under these facts.

In response, Ms. Carrier argues in her brief that she can recover mental anguish damages due to her proximity to the event, her "witnessing injury to others, and [the] contemporaneous reports from reliable sources that the danger is real." Thus, Ms. Carrier alleges that she can recover mental anguish damages despite not having a physical injury or property damage.

Before addressing the merits of this assignment of error, it is worth noting that a lump sum judgment of damages, as we have in this case, "is presumed to award all items of damages claimed, and the appellant's burden of proving the fact finder clearly abused its great discretion is more difficult than usual because the intention to award a specific amount for any particular item is not readily ascertainable." *Boutte v. Nissan Motor Corp.*, 94-1470, p.12 (La.App. 3 Cir. 9/13/95), 663 So.2d 154, 161. Nonetheless, because the lump sum of $3,895.00 awarded for damages is the full amount the Special Master recommended on behalf of Ms. Carrier, we assume the trial court adopted the Special Master's recommended mental anguish damage award of $500.00; evacuation/inconvenience award of $3,250.00; and lost wages award of $145.00. As such, we will now address whether the trial court erred in awarding Ms. Carrier damages for her mental anguish claim.

In this case, Ms. Carrier's petition requests the following damages: costs of medical treatment; past, present and future lost wages; past, present, and future mental anguish; loss of enjoyment of life; inconvenience; nuisance; medical

6

monitoring expenses; contamination to property; and trespass. The Special Master

provided the following pertinent findings of fact (emphasis added):

1. A train derailment occurred on August 4, 2013 between the time of 3:20pm and 3:30pm in Lawtell, Louisiana.

2. This derailment involved a train and tracks owned, operated and maintained by the defendant, Union Pacific Railroad Company.

3. As a result of the derailment, Governor Bobby Jindal issued a proclamation declaring the area a disaster area. This was widely disseminated by the local media and news outlets.

4. The media and local news outlets reported on the derailment and evacuation as well as the threat posed by the chemicals being transported in the rail cars.

5. As a result of this derailment, chemicals were spilled (including lube oil, dodecanol and sodium hydroxide) from some of the derailed train cars.

6. The derailment and its resulting chemical spill and the threat of the spill was the cause of an evacuation order being issued for the residents located within an approximate one mile radius of the derailment with the center of the radius being the derailment site and thus potentially extending that distance from either end of the derailment.

7. As a result of the derailment and resulting chemical spill and/or threat of chemical spill, many of the residents in areas near the derailment and evacuation area were displaced and were required to be evacuated from their homes, property and/or businesses. **The result was widespread fear and fright and/or mental anguish and anxiety for many residents within the evacuation zone and extending to many residents located outside of the evacuation zone based on the perception of some residents of a real danger or threat of harm from the derailment and the cargo and contents of some of the tank cars.**

. . . .

17. The evacuation order and associated evacuation of residents was a direct result of the train derailment.

18. Elaine Carrier and her two-year [old], Eric Carrier, evacuated from Sunday to Tuesday as a result of the derailment.

7

19.  Elaine Carrier learned of the evacuation while watching the news. A police officer officer never came to her house and ordered her to evacuate.

20.  Elaine Carrier saw the derailed cars after the derailment occurred.

In light of these factual findings, the Special Master recommended the trial court award Ms. Carrier $500.00 in damages for her mental anguish claim. Specifically, the Special Master provided the following reasons for awarding mental anguish damages:

> I find that the testimony of Elaine Carrier, individually and on behalf of her minor son, Eric Carrier, regarding what she and Eric experienced in the derailment, the chemical spill and/or threat of chemical spill and evacuation to be credible. I find that her concerns are real to her and that she has proven a particular likelihood of genuine, serious and causally connected mental distress arising from the special circumstances of the train derailment and resulting chemical spill, the threat of a chemical spill and resulting evacuation. I find that the "special circumstances" of a train derailment and resulting chemical spill and uncertain threat of chemical spill and evacuation which occurred in close proximity to plaintiff's house are more serious and distressful circumstances than the circumstances presented in the cases of *Moresi* and *Bonnette* [*v. Conoco, Inc.*, 01-2767 (La. 1/28/03), 837 So.2d 1219]. Additionally, unlike in *Moresi* and *Bonnette*, the plaintiffs in this case, Elaine Carrier[] and her minor son, Eric Carrier, evacuated from their home. This evacuation order was issued as a precautionary measure in order to protect area residents from any harm, or potential harm, arising from the derailment and chemical spill. Furthermore, the widespread media and government coverage and statements of authorities established that there was a real threat of harm for area residents resulting from the derailment and chemical spill. These are major distinguishing factors between this incident and the incidents that occurred in *Moresi*, *Bonnette* and *Howard* [*v. Union Carbide Corp.*, 09-2750 (La. 10/19/10), 50 So.3d 1251] that cannot be ignored. As such, for the reasons stated above, and the law and evidence herein, I find that this case is factually distinguishable from *Moresi, Bonnette* and *Howard*.
>
> I find the worry and fear of plaintiff, Elaine Carrier, to be genuine, serious and reasonable under the circumstances. Ms. Carrier testified that she saw a big cloud of dust and smelled an odor similar to "bleach chemicals." She saw the derailed train cars on the day of the derailment. She testified that this made her fearful at the time but she [no] longer has fear today. Elaine Carrier testified that she saw the cleaning crew at the derailment after it occurred and that this gave her concern at that time, but she is no longer concerned. While she

8

was not home at the time of the derailment, she testified that she lived about half a mile from the derailment.

We also find *Bonnette v. Conoco, Inc.,* 837 So.2d 1219, cited by Union Pacific, distinguishable from the facts of this case because it involved claims for exposure to asbestos, and the fear of developing an asbestos related cancer, and did not involve claims for witnessing the wreckage of a train derailment, spilled chemicals, a governor's emergency proclamation, emergency response and evacuation, and the lengthy clean-up of that derailment. Similarly, *Moresi*, 567 So.2d 1081, which involved a civil rights action by duck hunters against the state game agents who left a note on the wrong camp, is also distinguishable for those reasons. After a review of the record, we agree with the Special Master's reasons for awarding Ms. Carrier mental anguish damages and also find that Ms. Carrier's testimony regarding the train derailment, the uncertain threat of the chemical spill, and the evacuation that occurred within a mile of her home presents the type of special circumstances described by the supreme court in *Moresi*.

Based on these facts and the mental distress experienced by Ms. Carrier, we find no abuse of discretion in the trial court's damage award of $500.00 for her mental anguish claim.

## *Negligent Infliction of Inconvenience*

Union Pacific alleges in its second assignment of error that the trial court erred in awarding damages to Ms. Carrier on the basis of negligent infliction of inconvenience, absent any accompanying physical injury or property damage. Union Pacific argues that "Louisiana courts have never permitted the recovery of damages for 'inconvenience' from an 'evacuation' in instances where those evacuated persons had no physical injury or property damage, and were provided reasonable accommodations."

Contrarily, Ms. Carrier argues that "inconvenience damages can be awarded as general damages" and that she "suffered a 'present injury' in having to evacuate her home for three days" and that the "evacuation was the result of a proven event which caused a temporary deprivation of . . . [her] legally protected interest in her home." Ms. Carrier cites to *McDonald v. Illinois Central Gulf Railroad Co.*, 546 So.2d 1287 (La.App. 1 Cir.), *writs denied*, 551 So.2d 1340 (La.1989) to support her argument that Louisiana law allows recovery for inconvenience when plaintiffs are forced to immediately evacuate from their home.

In *McDonald*, a train derailed about half a mile from the McDonalds' home causing a huge explosion. The explosion caused a fire to erupt, and it blew out the front windows of the Quick Stop Grocery Store, which was owned and operated by the McDonalds. Although Mr. McDonald actually witnessed the explosion that caused glass to break in his store, Mrs. McDonald only heard the explosion from her home. The McDonalds were forced to flee their home for two weeks and had to live with relatives.

On appeal, the court found an award for the McDonalds' inconvenience was appropriate. Specifically, the court stated, in pertinent part:

> The inconvenience he [Mr. McDonald] experienced during the evacuation is also compensable, since it is directly related to the derailment. Likewise, Mrs. McDonald is entitled to an award for inconvenience during the two weeks she was forced to stay with relatives during the evacuation. Both were forced out of their home by the derailment and were, even for another two weeks, compelled to spend all their time cleaning up their home and store. An award of $5,000.00 to each plaintiff for immediate inconvenience is appropriate.

*McDonald,* 546 So.2d at 1292 (citation omitted).

The only evidence in the record to support an award for inconvenience is Ms. Carrier's testimony. She testified that she "was unable to get to work" and

that it was difficult "to provide . . . [for] a two-year-old" during the evacuation period. Additionally, Ms. Carrier testified that the derailment had an impact on her life, and stated as follows:

> I mean, it's just amazing to seen [sic] a thing like that, you know, or experience anything like it, and just being put in [that] position, you know, not to continue your daily chores or even just feel like it could have been my life, you know, if it - - if I would have been any closer on Highway 190. Just thinking that thankfully it didn't flip in my yard. You know, just the fear of that, just experiencing it.

Similar to the McDonalds, Ms. Carrier testified that she witnessed the derailment, that her home was within a mile from the accident, and that she had to evacuate with her two-year-old son. Based on these facts, we cannot say the trial court abused its great discretion in awarding inconvenience damages to Ms. Carrier. Accordingly, we find no merit to this assignment of error.

### *Damage Award of $3,250.00 for Negligent Infliction of Inconvenience*

As an alternative to its second assignment of error, Union Pacific argues in its third assignment of error that the trial court abused its discretion by awarding Ms. Carrier $3,250.00 for evacuation and inconvenience damages. In support of its argument, Union Pacific cites to *England v. Fifth Louisiana Levee District*, 49,795 (La.App. 2 Cir. 6/3/15), 167 So.3d 1105, wherein the plaintiffs had no physical injuries or physical damage to their property, to suggest that the highest reasonable award justified by this record is $50.00 per day. In response, Ms. Carrier cites to *McDonald* and *In re New Orleans Train Car Leakage Fire Litigation*, 00-1919 (La.App. 4 Cir. 4/20/05), 903 So.2d 9, *writ denied*, 05-1297 (La. 2/3/06), 922 So.2d 1171, to support her award of $3,250.00 for evacuation and inconvenience damages.

In *McDonald,* 546 So.2d 1287, the first circuit concluded the highest reasonable award permissible for inconvenience, where the plaintiffs were forced

11

to evacuate following a train derailment that caused explosions and fires that damaged their property, was $5,000.00 for the evacuation and inconvenience. In that case, the McDonalds were forced to flee their home and business for two weeks and had to live with relatives. When they could return, the McDonalds spent time cleaning up the mess on their property that was left behind from the explosions and fire.

In *In re New Orleans Train Car Leakage Fire Litigation*, 903 So.2d 9, the fourth circuit affirmed the finding that damages for inconvenience were appropriate for numerous plaintiffs injured by a leaking tank car fire. The defendants only challenged one of the evacuation/inconvenience awards, and that was of Jacqueline Thomas. Ms. Thomas was awarded $60,000.00 for physical pain and suffering, $25,000.00 for mental anguish, and $15,000.00 for evacuation/inconvenience. The defendants challenged the entirety of her award as being unsupported. Not only did Ms. Thomas experience physical symptoms, she was elderly and caring for five of her grandchildren. She, along with the children, evacuated to an overcrowded shelter that was unsanitary. She did not have time to pack extra clothes and continued to wear a shirt soaked with urine because she did not have enough diapers for the baby. When Ms. Thomas returned home, she had to clean the entire house, wash all of the clothes, and throw away all of the food. The appellate court affirmed the award.

*England,* 167 So.3d 1105, also supports an award in this case. In *England,* the second circuit awarded $50.00 per day for ten days for inconvenience damages due to a contaminated water supply plus an additional $100.00 for direct expenses for the cost of additional water supplies. Plaintiffs in that case were forced to make trips to laundry facilities, daily trips to bathe at friends' homes, and trips to

12

purchase bottled water. The *England* court specifically stated that "loss of use of property allows for economic recovery in tort." *Id*. at 1113.

Additionally, the fourth circuit in *Adams v. CSX Railroads*, 01-114 (La.App. 4 Cir. 4/20/05), 902 So.2d 413, also reviewed the same leaking tank car fire involved in *In re New Orleans Train Car Leakage Fire Litigation*, 903 So.2d 9. Several plaintiffs sought review of the trial court's denial of their motion for new trial in which they alleged there was no factual basis to support the low damages awarded by the jury. On appeal, only one plaintiff's evacuation/inconvenience damage amount was challenged, that of Sandra August, who received $200.00 for physical pain and suffering as well as $500.00 for evacuation/inconvenience.[6] Ms. August evacuated her home in the morning and returned home the following day. She suffered from "eye, nose and throat irritation for two days[.]" *Id*. at 417. The fourth circuit found no abuse in discretion of the $500.00 awarded for Ms. August's evacuation and inconvenience.

In this case, Ms. Carrier testified that the only inconvenience she experienced was having to leave her home for forty-eight hours with her two-year old son and her stepmother. There is no evidence that she had to endure any particular hardship, especially considering that Union Pacific paid all expenses for room and board. Although Ms. Carrier cites to *McDonald* and *In re New Orleans Train Car Leakage Fire Litigation* to support her award of $3,250.00 for evacuation and inconvenience damages, we find these cases distinguishable based on the fact that the plaintiffs in those cases suffered either physical injuries and/or property damages along with their inconvenience damages. We also find the *England* case distinguishable from the facts of this case because unlike Ms.

---

[6] Shunta Dickerson was awarded $100.00 for "evacuation *expenses*[,]" but those damages were not listed as "evacuation/inconvenience" damages as were Ms. August's damages. *Adams*, 902 So.2d at 417 (emphasis added).

13

Carrier, the plaintiffs in *England* were not asked to evacuate and were not displaced from their homes.

Accordingly, based on these facts where Ms. Carrier was provided all expenses from room and board, and did not suffer any physical or property damage, we find that the jurisprudence does not support the trial court's award of $3,250.00 for mere inconvenience. Rather, we find the highest reasonable award justified for Ms. Carrier's two-day evacuation/inconvenience is $500.00 a day. Thus, we hereby amend Ms. Carrier's evacuation/inconvenience damage award of $3,250.00 to $1,000.00.

### *Lost Wages:*

Union Pacific argues in its fourth assignment of error that the trial court erred in its award for lost wages because there is "no evidence of record whatsoever linking the derailment to any work hours missed" by Ms. Carrier. Further, Union Pacific argues that Ms. Carrier's testimony alone cannot establish a lost wage claim. Conversely, Ms. Carrier asserts that she was "forced to evacuate her home with her family due to the train derailment" and that a "direct result [of] such evacuation was that she was not able to return to work during that time." Thus, Ms. Carrier argues that the trial court was within its discretion in awarding her $145.00 for lost wages.[7]

To recover for actual wage loss, a plaintiff must prove that she "would have been earning wages but for the accident in question." *Boyette v. United Servs. Auto. Ass'n*, 00-1918, p. 3 (La. 4/3/01), 783 So.2d 1276, 1279. "[I]t is the plaintiff's burden to prove past lost earnings and the length of time missed from work due to the accident." *Id.* A trial court has "broad discretion in assessing

---

[7] Again, because the lump sum of $3,895.00 awarded for damages is the full amount the Special Master recommended on behalf of Ms. Carrier, we assume the trial court adopted the Special Master's recommended "Lost Wages" award of $145.00.

awards for lost earnings, but there must be a factual basis in the record for the award." *Driscoll v. Stucker*, 04-589, p. 29 (La. 1/19/05), 893 So.2d 32, 53. "For purposes of determining damages, the amount of lost earnings need not be proved with mathematical certainty, but by such proof as reasonably establishes the claim, and such proof may consist only of the plaintiff's own testimony." *Id.*

In the present case, Ms. Carrier testified that she missed between sixteen to twenty hours of work as a result of the train derailment and the mandatory evacuation. Ms. Carrier also testified that at the time of the derailment, she was receiving an hourly wage of $7.25 while working for Active Adult Daycare Center. After a review of the record, and in consideration of the trial court's broad discretion in assessing damages, we find that the trial court had a reasonable factual basis for its award of past lost wages in the amount $145.00. Accordingly, we find no merit to this assignment of error.

**CONCLUSION:**

After a review of the record, we find that the trial court abused its discretion in awarding Ms. Carrier $3,250.00 for her evacuation and inconvenience damages, and we hereby amend this award to $1,000.00. Further, we affirm the $500.00 award for mental anguish and the $145.00 award for lost wages, for a total damage award of $1,645.00. Costs of this appeal are assessed one-half to Ms. Carrier and one-half to Union Pacific.

**AMENDED AND, AS AMENDED, AFFIRMED.**