# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 18-905


**JOSHUA L. ADAMS, ET AL.**

**VERSUS**

**UNION PACIFIC RAILROAD COMPANY, ET AL.**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 14-C-3165-B
HONORABLE A. GERARD CASWELL, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## CANDYCE G. PERRET
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of D. Kent Savoie, Candyce G. Perret, and Jonathan W. Perry, Judges.


**AMENDED AND, AS AMENDED, AFFIRMED.**

Kenneth Warren DeJean
Attorney at Law
Post Office Box 4235
Lafayette, LA 70502
(337) 235-5294
SPECIAL MASTER

William H. Howard, III
Alissa A. Allison
Laura E. Carlisle
Kathlyn G. Perez
Baker Donelson Bearman Caldwell
& Berkowitz, P.C.
201 St. Charles Avenue, Suite 3600
New Orleans, LA 70170
(504) 566-5200
COUNSEL FOR DEFENDANT/APPELLANT:
    Union Pacific Railroad Company

Steven J. Levine
Paul LeBlanc
John B. Shortess
Phelps Dunbar, LLP
Post Office Box 4412
Baton Rouge, LA 70821-4412
(225) 346-0285
COUNSEL FOR DEFENDANT/APPELLANT:
    Union Pacific Railroad Company

Antonio M. Clayton
Clayton, Frugé & Ward
3741 Highway 1 South
Port Allen, LA 70767
(225) 344-7000
COUNSEL FOR DEFENDANT/APPELLANT:
    Union Pacific Railroad Company

Elena A. Pecoraro
Grant F. Freeman
Anna M. Grand
Pecoraro Law Firm
95 Woods Crossing, Suite 100
Lafayette, LA 70508
(337) 266-2233
COUNSEL FOR DEFENDANT/APPELLANT:
    Union Pacific Railroad Company

**D. Blayne Honeycutt**
**Colt J. Fore**
**Hannah Honeycutt Calandro**
**Fayard & Honeycutt**
**519 Florida Avenue, SW**
**Denham Springs, LA 70726**
**(225) 664-0304**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
       **Catherine Carriere**

**PERRET, Judge.**

In this train derailment case, defendant, Union Pacific Railroad Company (hereinafter, referred to as "Union Pacific"), appeals a trial court judgment that awarded plaintiff, Catherine Carriere, damages in the amount of $6,840.00. For the following reasons, we find that the trial court abused its discretion in awarding Ms. Carriere $5,500.00 for her evacuation and inconvenience damages and we hereby amend this award to $1,000.00. We affirm the $1,200.00 award for mental anguish and the $140.00 award for clothes, for a total damage award of $2,340.00.

**FACTS AND PROCEDURAL HISTORY:**

On August 4, 2013, twenty-six railcars[1] derailed near Lawtell, Louisiana, causing lube oil, dodecanol, and sodium hydroxide solution (also referred to as sulfidic caustic solution) to spill from some of the derailed train cars. Union Pacific owned and operated the train and tracks at issue and, as a result of the derailment and chemical spill, authorities implemented a one-mile radius evacuation zone that remained in effect until August 7, 2013.

Ms. Carriere filed suit against Union Pacific on July 11, 2014. On September 12, 2016, Union Pacific stipulated to liability; thus, causation and damages were the only issues before the trial court. On February 8, 2017, the trial court appointed Kenneth DeJean as the Special Master pursuant to La.R.S. 13:4165, to preside over all the trials and ordered that each plaintiff's case be tried separately.[2]

---

[1] Union Pacific's brief refers to only twenty-three train cars derailing. However, the evidence suggests that an updated report from Union Pacific indicated that twenty-six train cars derailed.

[2] The appointment of a special master may be made "[p]ursuant to the inherent judicial power of the court and upon its own motion and with the consent of all parties litigant." La.R.S. 13:4165(A). In such capacity, the special master "has and shall exercise the power to regulate all proceedings before him and to do all acts and take all measures necessary or proper for the efficient performance of his duties." La.R.S. 13:4165(B). Such duties may include making "findings of fact or conclusions of law." La.R.S. 13:4165(C)(1).

Union Pacific presented its case on June 27-28, 2017, with Ms. Carriere presenting her case on June 27, 2017. On October 11, 2017, the Special Master issued his Report and Recommendation, which found that Ms. Carriere "has proven that, it is more probable than not, her complaints and damages as stated at trial were caused as a result of the train derailment and resulting chemical spill and/or the threat of a chemical spill and the evacuation." The Special Master "recommend[ed] that the District Court find that causation for her complaints and damages has been established" and recommended that the trial court award Ms. Carriere $5,500.00 for "Evacuation/Inconvenience," $1,200.00 for "Mental Anguish," and $140.00 for "Other (Clothes)." The Special Master's Report and Recommendation summarized Ms. Carriere's testimony, as follows (citations to the record omitted):

> At the time of the derailment, Catherine Carriere was living with her husband and two children at 104 Pine Loop. She did not hear or see the derailment. She found out about the derailment when a police officer came to her door and told her she had to evacuate right away. She did not suffer any physical injuries as a result of the derailment. While they were evacuated, the plaintiff and her two children ultimately went to Evangeline Downs to stay until Tuesday when they returned to their house. The plaintiff and her family were evacuated for a total of three days.

> On the Tuesday morning after the derailment, the plaintiff drove her daughter to Shreveport for an MRI and then found out that her daughter had to have her fourth surgery for brain tumors. She testified that when she was on her way back from Shreveport on Tuesday morning, the hotel at Evangeline Downs called her three times and told her that they had to get their stuff out of the hotel. The plaintiff testified that this was frustrating and nerve-racking. She testified that she had to buy clothes as a result of the evacuation because she was told it was only supposed to be an overnight evacuation and the clothes cost about $140.00.

> She testified that when she got back home, she witnessed the clean-up process and this made her worried about her health and her children's health. She testified that she was inconvenienced by the road closures after the derailment. She testified that she still worries as a result of the derailment. She testified that she was dealing with a

lot of other stuff during the time of the evacuation and the evacuation compounded it and made it worse.

Ms. Carriere testified that Union Pacific paid for their hotel room and food while they were evacuated. She testified that she did not seek any medical treatment as a result of the derailment, nor did her children or husband. She testified that for about two weeks after the derailment, her family had to boil water to bathe in it because it was discolored. She testified at trial that her fear did not go away when she returned home after the evacuation order was lifted; however, she testified during her deposition that her fear lasted only until she got back home.

She testified that she did not lose any wages as a result of the derailment. Ms. Carriere testified that there is no evidence that she was exposed to any chemicals. When questioned on cross-examination about any inconvenience the derailment caused her, Ms. Carriere testified as follows:

Q: As a matter of fact, in your deposition, you said that this derailment had no other effect on your daily life, other than the hotel maybe throwing your clothes away, is that correct?

A: Correct.

Q: So in terms of inconvenience, and he said were you inconvenienced as a result of it, in essence, Ms. Carriere, this is a derailment, nobody wants a derailment to happen, but it didn't affect you and your family, thank God. Am I correct with that?

A: Correct.

She testified that when she went back home after the evacuation, a DEQ representative tested the air quality of her home and everything was safe. She testified that the derailment caused her inconvenience and that it led to an increase in her emotional distress.

On October 23, 2017, Union Pacific filed an objection to the Report and Recommendation with the trial court arguing for a de novo review on the basis that the Special Master's "findings of fact and conclusions of law are erroneous." Following a hearing on July 27, 2018, the trial court issued an oral ruling affirming the Special Master's Report and Recommendation and subsequently rendered a

written judgment in favor of Ms. Carriere and against Union Pacific. Notably, the trial court awarded Ms. Carriere a lump sum in the amount of $6,840.00.[3]

Union Pacific now appeals this judgment, alleging the following five assignments of error: (1) the trial court erred in awarding damages to Ms. Carriere for mental anguish, absent any accompanying physical injury or property damage; (2) the trial court erred in awarding damages to Ms. Carriere for mental anguish concerning injury to other persons, when the conditions of La.Civ.Code art. 2315.6 were not satisfied; (3) the trial court erred in awarding damages to Ms. Carriere on the basis of negligent infliction of inconvenience, absent any accompanying physical injury or property damage; (4) the trial court abused its discretion by awarding $5,500.00 for inconvenience; and (5) the trial court erred in awarding $140.00 for out-of-pocket expenses, absent any accompanying documentary support or corroboration for such expenses.

**STANDARD OF REVIEW:**

In this case, the trial judge sat as the trier of fact.[4] In order for this court to reverse the factual findings of the trial judge, manifest error must exist. *Stobart v. State*, *Dep't of Transp. and Dev.*, 617 So.2d 880 (La.1993). Under a manifest error standard of review, this court can only reverse if it finds, based on the entire record, that there is no reasonable factual basis for the factual finding and that the

---

[3] The judgment at issue was signed on September 6, 2018, and was designated as final and immediately appealable.

[4] Although under the authority of La.R.S. 13:4165 the district court empowered the Special Master to make findings of fact and conclusions of law, the Louisiana constitution and laws vest the judicial power in judges to make the final determinations of fact and conclusions of law. *See Bordelon v. Louisiana Dep't of Corrections,* 398 So.2d 1103 (La.1981). In conformity with that mandate, La.R.S. 13:4165(C)(3) provides, in pertinent part, "After a contradictory hearing, the court may adopt the report, modify it, reject it in whole or in part, receive further evidence, or recommit it with instructions." In the present case, the trial court affirmed the Special Master's findings of fact and conclusions of law. Thus, the trial judge functioned as the ultimate factfinder and adjudicator of the law in this case.

factfinder is clearly wrong. *Id.* As stated in *Rosell v. ESCO*, 549 So.2d 840, 844-45 (La.1989) (citations omitted):

> [w]hen findings are based on determinations regarding the credibility of witnesses, the manifest error—clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable fact finder would not credit the witness's story, the court of appeal may well find manifest error or clear wrongness even in a finding purportedly based upon a credibility determination. But where such factors are not present, and a factfinder's finding is based on its decision to credit the testimony of one of two or more witnesses, that finding can virtually never be manifestly erroneous or clearly wrong.

Thus, this court must be cautious not to reweigh the evidence or to substitute its own factual findings just because it would have decided the case differently.

Further, the trial court has much discretion in assessing general damages, and an appellate court should not modify the award unless it is "beyond that which a reasonable trier of fact could assess for the effects of the particular injury to the particular plaintiff under the particular circumstances[.]" *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257, 1261 (La.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059 (1994). Only if the appellate court finds an abuse of discretion may it examine prior awards of general damages to determine the amount the trier of fact reasonably could award. *Theriot v. Allstate Ins. Co.*, 625 So.2d 1337 (La.1993). "In instances where the appellate court is compelled to modify awards, the award will only be disturbed to the extent of lowering or raising an award to the highest or lowest point which is reasonably within the discretion afforded the trial court." *Id.* at 1340.

5

**DISCUSSION:**

*Mental Anguish Damages*

Union Pacific argues in its first assignment of error that the trial court erred in awarding damages to Ms. Carriere on the basis of mental anguish, absent any accompanying physical injury or property damages. In support of this proposition, Union Pacific cites to the Louisiana Supreme Court case *Moresi v. State Through Department of Wildlife and Fisheries,* 567 So.2d 1081, 1095 (La.1990) wherein the plaintiffs sought "to recover on the basis that defendants' ordinary negligence caused them only mental disturbance." The court held that a plaintiff, without bodily harm or property damage, may recover for mental injuries if the situation creates "the especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious." *Id.* at 1096. Union Pacific argues that Ms. Carriere's circumstances do not constitute "special circumstances" and that the trial court manifestly erred in awarding mental anguish damages under these facts.

In response, Ms. Carriere argues that the train derailment and evacuation caused her emotional distress and that she can recover mental anguish damages despite not having a physical injury or property damage.

Before addressing the merits of this assignment of error, it is worth noting that a lump sum judgment of damages, as we have in this case, "is presumed to award all items of damages claimed, and the appellant's burden of proving the fact finder clearly abused its great discretion is more difficult than usual because the intention to award a specific amount for any particular item is not readily ascertainable." *Boutte v. Nissan Motor Corp.*, 94-1470, p.12 (La.App. 3 Cir. 9/13/95), 663 So.2d 154, 161. Nonetheless, because the lump sum of $6,840.00 awarded for damages is the full amount the Special Master recommended on

6

behalf of Ms. Carriere, we assume the trial court adopted the Special Master's recommended mental anguish damage award of $1,200.00; evacuation/inconvenience award of $5,500.00; and $140.00 for clothes. As such, we will now address whether the trial court erred in awarding Ms. Carriere damages for her mental anguish claim.

In this case, Ms. Carriere's petition requests the following damages: costs of medical treatment; past, present and future lost wages; past, present, and future mental anguish; loss of enjoyment of life; inconvenience; nuisance; medical monitoring expenses; contamination to property; and trespass. The Special Master provided the following pertinent findings of fact (emphasis added):

1. A train derailment occurred on August 4, 2013 between the time of 3:20pm and 3:30pm in Lawtell, Louisiana.

2. This derailment involved a train and tracks owned, operated and maintained by the defendant, Union Pacific Railroad Company.

3. As a result of the derailment, Governor Bobby Jindal issued a proclamation declaring the area a disaster area. This was widely disseminated by the local media and news outlets.

4. The media and local news outlets reported on the derailment and evacuation as well as the threat posed by the chemicals being transported in the rail cars.

5. As a result of this derailment, chemicals were spilled (including lube oil, dodecanol and sodium hydroxide) from some of the derailed train cars.

6. The derailment and its resulting chemical spill and the threat of the spill was the cause of an evacuation order being issued for the residents located within an approximate one mile radius of the derailment with the center of the radius being the derailment site and thus potentially extending that distance from either end of the derailment.

7. As a result of the derailment and resulting chemical spill and/or threat of chemical spill, many of the residents in areas near the derailment and evacuation area were displaced and were required to be evacuated from their homes, property and/or businesses. **The result was widespread fear and fright and/or mental anguish and anxiety for many residents within the evacuation zone and extending to many**

7

**residents located outside of the evacuation zone based on the perception of some residents of a real danger or threat of harm from the derailment and the cargo and contents of some of the tank cars.**

. . . .

17. The evacuation order and associated evacuation of residents was a direct result of the train derailment.

18. Catherine Carriere, her husband and her two children were required to evacuate on the day of the derailment and were evacuated for a total of three days.

19. Catherine Carriere testified that she spent $140.00 on clothes as a result of the derailment and resulting evacuation.

In light of these factual findings, the Special Master recommended the trial court award Ms. Carriere $500.00 in damages for her mental anguish claim. Specifically, the Special Master provided the following reasons for awarding mental anguish damages:

> In this case, I find that the testimony of Catherine Carriere regarding what she experienced in the derailment, the chemical spill and/or threat of chemical spill and evacuation to be credible. I find that her concerns are real to her and that she has proven a particular likelihood of genuine, serious and causally connected mental distress arising from the special circumstances of the train derailment and resulting chemical spill, the threat of a chemical spill and resulting evacuation order. I find that the "special circumstances" of a train derailment and resulting chemical spill and uncertain threat of chemical spill and evacuation which occurred in close proximity to plaintiff's house are more serious and distressful circumstances than the circumstances presented in the cases of *Moresi* and *Bonnette* [*v. Conoco, Inc.*, 01-2767 (La. 1/28/03), 837 So.2d 1219]. . Additionally, unlike in *Moresi* and *Bonnette*, the plaintiff in this case, Catherine Carriere, was required to evacuate from her home. This evacuation order was issued as a precautionary measure in order to protect area residents from any harm, or potential harm, arising from the derailment and chemical spill. Furthermore, the widespread media and government coverage and statements of authorities established that there was a real threat of harm for area residents resulting from the derailment and chemical spill. These are major distinguishing factors between this incident and the incidents that occurred in *Moresi, Bonnette* and *Howard* [*v. Union Carbide Corp.*, 09-2750 (La. 10/19/10), 50 So.3d 1251] that cannot be ignored. As such, for the reasons stated above, and the law and evidence herein, I find that this case is factually distinguishable from *Moresi*, *Bonnette* and *Howard.*

8

I find the worry and fear of plaintiff, Catherine Carriere, to be genuine, serious and reasonable under the circumstances. Catherine Carriere had a lot going on in her life at the time of the derailment, mainly her daughter's health issues (brain tumors), and the derailment and resulting chemical spill and evacuation compounded her emotional distress. She testified that they had to boil their bath water for about two weeks after the derailment because the water was discolored. She testified that she spent about $140.00 on clothes as a result of the derailment and evacuation because she was told it was supposed to be an overnight thing. She testified that she witnessed the clean-up process after the derailment and this made her worried about her health and her children's health.

Catherine Carriere was inconvenienced because she, along with her husband and two children, were required to evacuate on the day of the derailment, Sunday, August 4, 2013, and did not return home until Tuesday, August 6, 2013. The plaintiff testified that she was further inconvenienced because of the road closures after the derailment.

Considering the widespread coverage that the Lawtell train derailment and resulting chemical spill received from the media, state and local government and by word of mouth and the plaintiff's close proximity to the derailment site, I find the plaintiff's concern to be reasonable and more probable than not causally connected to the derailment, threat of the chemical spill and/or perceived threat of the chemical spill and the evacuation[.]

We also find *Bonnette v. Conoco, Inc.,* 837 So.2d 1219, cited by Union Pacific, distinguishable from the facts of this case because it involved claims for exposure to asbestos, and the fear of developing an asbestos related cancer, and did not involve claims for witnessing the wreckage of a train derailment, spilled chemicals, a governor's emergency proclamation, emergency response and evacuation, and the lengthy clean-up of that derailment. Similarly, *Moresi*, 567 So.2d 1081, which involved a civil rights action by duck hunters against the state game agents who left a note on the wrong camp, is also distinguishable for those reasons. After a review of the record, we agree with the Special Master's reasons for awarding Ms. Carriere mental anguish damages and also find that Ms. Carriere's testimony regarding the train derailment, the uncertain threat of the chemical spill, the evacuation that occurred within a mile of her home, and that she

worried about her family's health and well-being throughout the evacuation and cleanup presents the type of special circumstances described by the supreme court in *Moresi*.

Based on these facts and the mental distress experienced by Ms. Carriere, we find no abuse of discretion in the trial court's damage award of $1,200.00 for her mental anguish claim.

## *Mental Anguish Concerning Injury to Other Persons*

Union Pacific argues in its second assignment of error that if this court finds that Ms. Carriere is entitled to an award for mental anguish, then it should reduce the award granted because Ms. Carriere's derailment-related concern was based upon concern for the welfare of others. Specifically, Union Pacific argues that Ms. Carriere does not qualify for "by-stander" recovery under La.Civ.Code art. 2315.6, and that the award is erroneous.

Louisiana Civil Code Article 2315.6 provides, in pertinent part, as follows:

> A. The following persons who view an event causing injury to another person, or who come upon the scene of the event soon thereafter, may recover damages for mental anguish or emotional distress that they suffer as a result of the other person's injury:
>
> (1) The spouse, child or children, and grandchild or grandchildren of the injured person, or either the spouse, the child or children, or the grandchild or grandchildren of the injured person.
>
> (2) The father and mother of the injured person, or either of them.
>
> . . . .
>
> B. To recover for mental anguish or emotional distress under this Article, the injured person must suffer such harm that one can reasonably expect a person in the claimant's position to suffer serious mental anguish or emotional distress from the experience, and the claimant's mental anguish or emotional distress must be severe, debilitating, and foreseeable. Damages suffered as a result of mental anguish or emotional distress for injury to another shall be recovered only in accordance with this Article.

Ms. Carriere testified that the train derailment still impacts her life today and that it still worries her. Even though she agreed with counsel that she was "dealing with a whole lot of other stuff during the point in time of the evacuation[,]" she testified that the derailment "just compounded it and made it worse." We find the record supports that Ms. Carriere, herself, suffered mental anguish by having to evacuate her family for two days, having to witness the cleanup process after the derailment, and having to worry about her family's health because of the derailment. Accordingly, we find no merit in this assignment of error.

## *Negligent Infliction of Inconvenience*

Union Pacific alleges in its third assignment of error that the trial court erred in awarding damages to Ms. Carriere on the basis of negligent infliction of inconvenience, absent any accompanying physical injury or property damage. Union Pacific argues that "Louisiana courts have never permitted the recovery of damages for 'inconvenience' from an 'evacuation' in instances where those evacuated persons had no physical injury or property damage, and were provided reasonable accommodations."

Contrarily, Ms. Carriere argues that "inconvenience damages can be awarded as general damages" and that she "suffered a 'present injury' in having to evacuate her home for three days" and that the "evacuation was the result of a proven event which caused a temporary deprivation of . . . [her] legally protected interest in her home." Ms. Carriere cites to *McDonald v. Illinois Central Gulf Railroad Co.*, 546 So.2d 1287 (La.App. 1 Cir.), *writs denied*, 551 So.2d 1340 (La.1989) to support her argument that Louisiana law allows recovery for inconvenience when plaintiffs are forced to immediately evacuate from their home.

In *McDonald*, a train derailed about half a mile from the McDonalds' home causing a huge explosion. The explosion caused a fire to erupt, and it blew out the

11

front windows of the Quick Stop Grocery Store, which was owned and operated by Mr. and Mrs. McDonald. Although Mr. McDonald actually witnessed the explosion that caused glass to break in his store, Mrs. McDonald only heard the explosion from her home. The McDonalds were forced to flee their home for two weeks and had to live with relatives.

On appeal, the court found an award for the McDonalds' inconvenience was appropriate. Specifically, the court stated, in pertinent part:

> The inconvenience he [Mr. McDonald] experienced during the evacuation is also compensable, since it is directly related to the derailment. Likewise, Mrs. McDonald is entitled to an award for inconvenience during the two weeks she was forced to stay with relatives during the evacuation. Both were forced out of their home by the derailment and were, even for another two weeks, compelled to spend all their time cleaning up their home and store. An award of $5,000.00 to each plaintiff for immediate inconvenience is appropriate.

*McDonald,* 546 So.2d at 1292 (citation omitted).

Ms. Carriere testified that she was inconvenienced by the road closures in her area, and she evacuated with only one night of clothes after being told that the evacuation would last one day. Ms. Carriere also testified that she was inconvenienced by having to evacuate with her husband and two children for three days.

Similar to the McDonalds, Ms. Carriere testified that her home was within a mile from the derailment, and that she had to evacuate with her husband and two children for a couple of days. Based on these facts, we cannot say the trial court abused its great discretion in awarding Ms. Carriere with damages for inconvenience. Accordingly, we find no merit to this assignment of error.

### *Damage Award of $5,500.00 for Negligent Infliction of Inconvenience*

As an alternative to its third assignment of error, Union Pacific argues in its fourth assignment of error that the trial court abused its discretion by awarding Ms.

Carriere $5,500.00 for inconvenience. In support of its argument, Union Pacific cites to *England v. Fifth Louisiana Levee District*, 49,795 (La.App. 2 Cir. 6/3/15), 167 So.3d 1105, wherein the plaintiffs had no physical injuries or physical damage to their property, to suggest that the highest reasonable award justified by this record is $50.00 per day. In response, Ms. Carriere cites to *McDonald* and *In re New Orleans Train Car Leakage Fire Litigation*, 00-1919 (La.App. 4 Cir. 4/20/05), 903 So.2d 9, *writ denied*, 05-1297 (La. 2/3/06), 922 So.2d 1171, to support her award of $5,500 for inconvenience damages.

In *McDonald,* 546 So.2d 1287, the first circuit concluded the highest reasonable award permissible for inconvenience, where the plaintiffs were forced to evacuate following a train derailment that caused explosions and fires which damaged their property, was $5,000.00 for four weeks of evacuation and inconvenience. In that case, the McDonalds were forced to flee their home and business for two weeks and had to live with relatives. When they could return, the McDonalds spent time cleaning up the mess on their property that was left behind from the explosions and fire.

In *In re New Orleans Train Car Leakage Fire Litigation*, 903 So.2d 9, the fourth circuit affirmed the finding that damages for inconvenience were appropriate for numerous plaintiffs injured by a leaking tank car fire. The defendants only challenged one of the evacuation/inconvenience awards, and that was of Jacqueline Thomas. Ms. Thomas was awarded $60,000.00 for physical pain and suffering, $25,000.00 for mental anguish, and $15,000.00 for evacuation/inconvenience. The defendants challenged the entirety of her award as being unsupported. Not only did Ms. Thomas experience physical symptoms, she was elderly and caring for five of her grandchildren. She, along with the children, evacuated to an overcrowded shelter that was unsanitary. She did not have time to

13

pack extra clothes and continued to wear a shirt soaked with urine because she did not have enough diapers for the baby. When Ms. Thomas returned home, she had to clean the entire house, wash all of the clothes, and throw away all of the food. The appellate court affirmed the award.

*England,* 167 So.3d 1105, also supports an award in this case. In *England*, the second circuit awarded $50.00 per day for ten days for inconvenience damages due to a contaminated water supply plus an additional $100.00 for direct expenses for the cost of additional water supplies. Plaintiffs in that case were forced to make trips to laundry facilities, daily trips to bathe at friends' homes, and trips to purchase bottled water. The *England* court specifically stated that "loss of use of property allows for economic recovery in tort." *Id.* at 1113.

Additionally, the fourth circuit in *Adams v. CSX Railroads*, 01-114 (La.App. 4 Cir. 4/20/05), 902 So.2d 413, also reviewed the same leaking tank car fire involved in *In re New Orleans Train Car Leakage Fire Litigation*, 903 So.2d 9. Several plaintiffs sought review of the trial court's denial of their motion for new trial in which they alleged there was no factual basis to support the low damages awarded by the jury. On appeal, only one plaintiff's evacuation/inconvenience damage amount was challenged, that of Sandra August, who received $200.00 for physical pain and suffering as well as $500 for evacuation/inconvenience.[5] Ms. August evacuated her home in the morning and returned home the following day. She suffered from "eye, nose and throat irritation for two days[.]" *Id.* at 417. The fourth circuit found no abuse in discretion of the $500.00 awarded for Ms. August's evacuation and inconvenience.

---

[5] Shunta Dickerson was awarded $100.00 for "evacuation *expenses*[,]" but those damages were not listed as "evacuation/inconvenience" damages as were Ms. August's damages. *Adams*, 902 So.2d at 417 (emphasis added).

In this case, Ms. Carriere testified that the only inconvenience she experienced was having to leave her home for forty-eight hours with her two children. There is no evidence that she had to endure any particular hardship, especially considering that Union Pacific paid all expenses for room and board. Although Ms. Carriere cites to *McDonald* and *New Orleans Train Car Leakage Fire Litigation* to support her award of $5,500.00 for inconvenience damages, we find these cases distinguishable based on the fact that the plaintiffs in those cases suffered either physical injuries and/or property damages along with inconvenience damages. We also find the *England* case distinguishable from the facts of this case because unlike Ms. Carriere, the plaintiffs in *England* were not asked to evacuate and were not displaced from their homes.

Accordingly, based on these facts where Ms. Carriere was provided all expenses from room and board, and did not suffer any physical or property damage, we find that the jurisprudence does not support the trial court's award of $5,500.00 for mere inconvenience. Rather, we find the highest reasonable award justified for Ms. Carriere's two-day evacuation/inconvenience is $500.00 a day. Thus, we hereby amend Ms. Carriere's evacuation/inconvenience damage award of $5,500.00 to $1,000.00.

### *Damages for Clothes*

Union Pacific argues in its fifth assignment of error that the trial court erred in its award of $140.00 for out-of-pocket expenses (clothes), absent any accompanying documentary support or corroboration of such expenses.

In the present case, Ms. Carriere testified that she "only took one change of clothes" because she was told by a police officer that the evacuation would "be an overnight thing." Ms. Carriere relied upon the police officer's information that the evacuation would be overnight and testified that when the evacuation continued

longer than a day, she had no choice but to buy clothes in order to take her daughter to Shreveport for an MRI that was scheduled during the evacuation.

After a review of the record, and in consideration of the trial court's broad discretion in assessing damages, we find that the trial court had a reasonable factual basis for its award of $140.00 for Ms. Carriere's claim for clothes during the mandatory evacuation. Accordingly, we find no merit to this assignment of error.

**CONCLUSION:**

Accordingly, we find that the trial court abused its discretion in awarding Ms. Carrier $5,500.00 for her evacuation and inconvenience damages and we hereby amend this award to $1,000.00. Further, we affirm the $1,200.00 award for mental anguish and the $140.00 award for clothes, for a total damage award of $2,340.00. Costs of this appeal are assessed one-half to Ms. Carriere and one-half to Union Pacific.

**AMENDED AND, AS AMENDED, AFFIRMED.**